IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CALEEM LARONDE,

     Plaintiff,

vs.                            Case No: 3:13cv4/MCR/CJK

CHARLES MASON, et al.,

     Defendants.

---

### DEFENDANT LINDA BRADY'S MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW, Defendant, Linda Brady, individually, and by and through undersigned counsel, and files this motion to dismiss and memorandum of law in support, and states:

1.     Plaintiff has filed a multi-count complaint, *pro se,* which appears to allege claims against the Defendant, Linda Brady ("Brady").

2.     Plaintiff's Amended Complaint fails to state a cause of action or a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P.

3.     Plaintiff's Amended Complaint impermissibly comingles bare allegations and conclusions which even if taken as true, and even considering the *pro se* pleading by Plaintiff, fail to state a cause of action in that they fail to state either a violation of United States Code, the United States Constitution (the

only possible applicable one being the Eighth Amendment), or Florida State Law. For example, in paragraph 31, Plaintiff complains that the actions of Nurse Brady breached her "duty of care," and "violated this state's tort law of 'reckless disregard.'" There is no such generic tort law of reckless disregard in the state of Florida of which the undersigned is aware, and it is impossible to respond appropriately to such a generic allegation. If Plaintiff intends to state a medical care failure, or a medical malpractice claim, such allegations would fail to state a cause of action as recognized by the Supreme Court of the United States in *Estelle v. Gamble*, 429 U.S. 97 (1976), as not rising to a sufficient level to support a claim under U.S. Constitution Amendment VIII, or 42 U.S.C. § 1983.

4.     The same argument is also applicable to paragraph 32, that Brady was under no duty to comply with such orders assuming same is true, and that compliance with orders within the prison system are at the discretion of prison officials and not medical staff.

5.     Pursuant to N.D. Fla. Loc. R. 7.1, Defendant Brady has not attempted to confer with Plaintiff, who is *pro se* and incarcerated, as she is unable to do so. However, Defendant Brady expects that Plaintiff will oppose this motion.

## MEMORANDUM OF LAW

Defendant Brady files this memorandum in support with the motion, as permitted under Rule 7.1., N.D. Fla. Loc. R., and states:

Pursuant to Fed. R. Civ. P. § 8, a pleading must state a claim for relief and must contain a short and plain statement of the grounds for the Court's jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for the relief sought.  Plaintiff's Amended Complaint fails to comply with Fed. R. Civ. P. § 8(a)(2), in that it fails to state a short and plain statement of the claim showing the pleader is entitled to relief based upon any recognizable allegation at law or under the facts as pled.

Plaintiff's Amended Complaint attempts to plead what appears to be a claim under the Eighth Amendment to the United States Constitution, and allegedly under the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment is inapplicable.  Furthermore, with regard to the Eighth Amendment, the Court held in the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), 97 Sup Ct. 285 (50 L. Ed. 2d 251) that in order to even state a cognizable Civil Rights claim due to inadequate medical care a prisoner must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs.   Under the *Estelle* case, a complaint that a physician has been negligent (which would arguably include nursing staff), is insufficient.   In the present case, Plaintiff has not alleged medical malpractice but has only alleged in paragraphs 30 and 31 that the actions of Brady were inappropriate because she failed to demand from a high ranking prison official specific treatment for the Plaintiff, or alternatively that she failed to comply with a medical doctor's orders from the hospital where Plaintiff presented for treatment.  Even if taken as true

3

for purposes of this motion, both allegations fail to rise to a level to plead sufficiently to support a violation of the Eighth Amendment.  In the *Estelle* case, supra, the Court dismissed similar complaints on the grounds of failing to state a claim.

In the case of *Evans v. St. Lucie County Jail*, 448 Fed.Appx. 971 (2011), before the 11th Circuit Court of Appeals, the court held that delay in obtaining medical attention and treatment did not rise to deliberate indifference to serious medical needs sufficient to show a violation of the Fourteenth Amendment, due process, or the Eighth Amendment.  That court also cited 28 U.S.C. § 1915(a), pursuant to which the District Court should dismiss *sua sponte* civil complaints filed by prisoners seeking redress from governmental entities or governmental employees or officers, if the complaint fails to state a claim upon which relief can be granted.  Even accepting the allegations in the Amended Complaint as true and construing same in the light most favorable to the Plaintiff, the question before the Court is whether the complaint contains enough facts to state a claim of relief that is plausible on its face.  Plaintiff's Amended Complaint fails to set forth sufficient allegations.

Defendant Brady respectfully submits to this Court that Plaintiff's minimal and bare allegations as to this Defendant fail to rise to a level to sustain and support a claim for relief and should be dismissed by this Court as to this Defendant.

WHEREFORE, Defendant Brady respectfully prays this Court grant this motion, dismiss all claims against this Defendant, order Defendant go hence without day, and grant such further relief as the Court deems necessary and proper.

Respectfully submitted,

MICHAEL J. SCHOFIELD
Florida Bar No. 373656
Clark, Partington, Hart,
Larry, Bond & Stackhouse
125 West Romana Street, Suite 800
P. O. Box 13010
Pensacola, FL 32591-3010
mschofield@cphlaw.com
(850) 434-9200
(805) 432-7340 Fax
*Attorneys for Defendant Linda Brady*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via the Court's transmission of the Notice of Electronic Filing this 8th day of August, 2013, to Marcus O. Graper, Matthew F. Vitale, Office of the Attorney General, The Capitol, PL-01, Tallahassee, FL 32399, and furnished via regular U.S. Mail, postage prepaid, to Caleem LaRonde, Caleem Laronde, H18323, Franklin Correctional Institution, 1760 HWY 67 North, Carrabelle, Florida 32322.

MICHAEL J. SCHOFIELD

97 S.Ct. 285
Supreme Court of the United States

W. J. ESTELLE, Jr., Director, Texas Department
of Corrections, et al., Petitioners,
v.
J. W. GAMBLE.

No. 75-929. | Argued Oct. 5, 1976. | Decided Nov. 30,
1976. | Rehearing Denied Jan. 17, 1977. See 429 U.S.
1066, 97 S.Ct. 798.

State prisoner filed a pro se complaint against various
prison officials under civil rights statute for failure to
provide adequate medical care. The United States District
Court for the Southern District of Texas, at Houston,
dismissed the cause and the prisoner appealed. The
United States Court of Appeals for the Fifth Circuit, 516
F.2d 937, reversed and remanded, and denied rehearing en
banc, 521 F.2d 815. Certiorari was granted. The Supreme
Court, Mr. Justice Marshall, J., held, inter alia, that while
deliberate indifference to prisoner's serious illness or
injury constitutes cruel and unusual punishment in
violation of Eighth Amendment, prisoner's pro se
complaint showing that he had been seen and treated by
medical personnel on 17 occasions within three-month
period was insufficient to state a cause of action against
physician both in his capacity as treating physician and as
medical director of the corrections department, but case
would be remanded to consider whether a cause of action
was stated against other prison officials.

Reversed and remanded.

Mr. Justice Blackmun concurred in the judgment.

Mr. Justice Stevens filed a dissenting opinion.

West Headnotes (14)

[1]     **Federal Courts**
        **Review on Certiorari**

        Since prisoner's civil rights complaint was
        dismissed for failure to state a claim, Supreme
        Court must take as true its handwritten, pro se
        allegations. 42 U.S.C.A. § 1983.

2038 Cases that cite this headnote

[2]     **Sentencing and Punishment**
        **Purpose of Prohibition**

        Primary concern of drafter of constitutional
        prohibition against cruel and unusual
        punishment was to proscribe torture and other
        barbarous methods of punishment; amendment
        proscribes more than physically barbarous
        punishments and embodies broad and idealistic
        concepts of dignity, civilized standards,
        humanity and decency against which court must
        evaluate penal measures. U.S.C.A.Const.
        Amend. 8.

577 Cases that cite this headnote

[3]     **Sentencing and Punishment**
        **Scope of Prohibition**

        Punishments which are incompatible with
        evolving standards of decency that mark
        progress of maturing society or which involve
        unnecessary or wanton infliction of pain are
        repugnant to Eighth Amendment.
        U.S.C.A.Const. Amend. 8.

1836 Cases that cite this headnote

[4]     **Sentencing and Punishment**
        **Proportionality**

        Eighth Amendment proscribes punishments
        which are grossly disproportionate to the
        severity of crime. U.S.C.A.Const. Amend. 8.

52 Cases that cite this headnote

[5]     **Sentencing and Punishment**
        **Declaring Act Criminal**

Eighth Amendment imposes substantive limits on what can be made criminal and punished. U.S.C.A.Const. Amend. 8.

11 Cases that cite this headnote

[6]     **Prisons**
        ☞Health and Medical Care

Government has obligation to provide medical care for those whom it is punishing by incarceration. U.S.C.A.Const. Amend. 8.

437 Cases that cite this headnote

[7]     **Sentencing and Punishment**
        ☞Medical Care and Treatment

Infliction of unnecessary suffering on prisoner by failure to treat his medical needs is inconsistent with contemporary standards of decency and violates the Eighth Amendment. U.S.C.A.Const. Amend. 8.

7564 Cases that cite this headnote

[8]     **Civil Rights**
        ☞Medical Care and Treatment
        **Sentencing and Punishment**
        ☞Medical Care and Treatment

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment whether the indifference is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed; regardless of how evidenced deliberate indifference to prisoner's serious illness or injuries states cause of action under civil rights statute. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

20543 Cases that cite this headnote

[9]     **Civil Rights**
        ☞Prisons

Accident even though it may produce added anguish is not on that basis alone to be characterized as wanton infliction of unnecessary pain on prisoner as the basis for a cause of action under civil rights statute. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

207 Cases that cite this headnote

[10]    **Civil Rights**
        ☞Medical Care and Treatment

Inadvertent failure to provide adequate medical care to prisoner cannot be said to constitute a wanton infliction of unnecessary pain on prisoner or to be repugnant to conscience of mankind for purpose of providing cause of action under civil rights statute. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

2711 Cases that cite this headnote

[11]    **Civil Rights**
        ☞Prisons and Jails; Probation and Parole
        **Sentencing and Punishment**
        ☞Medical Care and Treatment

Complaint that physician has been negligent in diagnosing or treating medical condition of prisoner does not state a valid claim of medical mistreatment under the Eighth Amendment; medical malpractice does not become a constitutional violation merely because victim is a prisoner. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

5383 Cases that cite this headnote

[12]    **Civil Rights**

◎—Medical Care and Treatment
**Sentencing and Punishment**
◎—Medical Care and Treatment

In order to state a cognizable claim under civil rights statute because of inadequate medical care, prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

13916 Cases that cite this headnote

[13]   **Federal Civil Procedure**
◎—Prisoners' Pleadings
**Federal Civil Procedure**
◎—Civil Rights Actions

Handwritten pro se civil rights complaint of prisoner was to be liberally construed and must be held to less stringent standards than formal pleadings by lawyer, and complaint could be dismissed for failure to state a claim only if it appeared beyond doubt that plaintiff could prove no set of facts in support of claim which would entitle him to relief.

6687 Cases that cite this headnote

[14]   **Civil Rights**
◎—Prisons and Jails; Probation and Parole

Complaint of prisoner alleging inadequate medical care but showing that he was seen by medical personnel on 17 occasions in a three-month period during which he was treated for his back injury, high blood pressure and heart problem and merely contending that more should have been done by the way of diagnosis and treatment failed to state cause of action against physician in his capacity either as treating physician or as medical director of corrections department, although case was remanded to determine whether cause of action had been stated against other prison officials. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

1208 Cases that cite this headnote

**\*\*287 Syllabus\***
**\*97** Respondent state inmate brought this civil rights action under 42 U.S.C. s 1983 against petitioners, the state corrections department medical director (Gray) and two correctional officials, claiming that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment for inadequate treatment of a back injury assertedly sustained while he was engaged in prison work. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. The Court of Appeals held that the alleged insufficiency of the medical treatment required reinstatement of the complaint. Held: Deliberate indifference by prison personnel to a prisoner's serious illness or injury constitutes cruel and unusual punishment contravening the Eighth Amendment. Here, however, respondent's claims against Gray do not suggest such indifference, the allegations revealing that Gray and other medical personnel saw respondent on 17 occasions during a 3-month span and treated his injury and other problems. The failure to perform an X-ray or to use additional diagnostic techniques does not constitute cruel and unusual punishment but is at most medical malpractice cognizable in the state courts. The question whether respondent has stated a constitutional claim against the other petitioners, the Director of the Department of Corrections and the **\*\*288** warden of the prison, was not separately evaluated by the Court of Appeals and should be considered on remand. Pp. 289-293.

516 F.2d 937, reversed and remanded.

**Attorneys and Law Firms**

Bert W. Pluymen, Austin, Tex., for petitioners, pro hac vice, by special leave of Court.

**\*98** Daniel K. Hedges, Houston, Tex., for respondent, pro hac vice, by special leave of Court.

**Opinion**

Mr. Justice MARSHALL delivered the opinion of the Court.

Respondent J. W. Gamble, an inmate of the Texas Department of Corrections, was injured on November 9, 1973, while performing a prison work assignment. On February 11, 1974, he instituted this civil rights action

under 42 U.S.C. s 1983,[1] complaining of the treatment he received after the injury. Named as defendants were the petitioners, W. J. Estelle, Jr., Director of the Department of Corrections, H. H. Husbands, warden of the prison, and Dr. Ralph Gray, medical director of the Department and chief medical officer of the prison hospital. The District Court, sua sponte dismissed the complaint for failure to state a claim upon which relief could be granted.[2] The Court of Appeals reversed and remanded with instructions to reinstate the complaint. 516 F.2d 937 (C.A.5 1975). We granted certiorari, 424 U.S. 907, 96 S.Ct. 1101, 47 L.Ed.2d 311 (1976).

*99 I

[1] Because the complaint was dismissed for failure to state a claim, we must take as true its handwritten, pro se allegations. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). According to the complaint, Gamble was injured on November 9, 1973, when a bale of cotton[3] fell on him while he was unloading a truck. He continued to work but after four hours he became stiff and was granted a pass to the unit hospital. At the hospital a medical assistant, "Captain" Blunt, checked him for a hernia and sent him back to his cell. Within two hours the pain became so intense that Gamble returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, Gamble saw a Dr. Astone who diagnosed the injury as a lower back strain, prescribed Zactirin (a pain reliever) and Robaxin (a muscle relaxant),[4] and placed respondent on "cell-pass, cell-feed" status for two days, allowing him to remain in his cell at all times except for meals. On November 12, Gamble again saw Dr. Astone who continued the medication and cell-pass, cell-feed for another seven days. He also ordered that respondent be moved from an upper to a lower bunk for one week, but the prison authorities did not comply with that directive. The following week, Gamble returned to Dr. Astone. The doctor continued the muscle relaxant but prescribed a new pain reliever, Febridyne, and placed respondent on cell-pass for seven days, permitting him to remain in his cell except for meals and showers. On November 26, respondent **289 again saw Dr. Astone, who put respondent back on the original pain reliever for five days and continued the cell-pass for another week.

*100 On December 3, despite Gamble's statement that his back hurt as much as it had the first day, Dr. Astone took him off cell-pass, thereby certifying him to be capable of light work. At the same time, Dr. Astone prescribed Febridyne for seven days. Gamble then went to a Major

Muddox and told him that he was in too much pain to work. Muddox had respondent moved to "administrative segregation."[5] On December 5, Gamble was taken before the prison disciplinary committee, apparently because of his refusal to work. When the committee heard his complaint of back pain and high blood pressure, it directed that he be seen by another doctor.

On December 6, respondent saw petitioner Gray, who performed a urinalysis, blood test, and blood pressure measurement. Dr. Gray prescribed the drug Ser-Ap-Es for the high blood pressure and more Febridyne for the back pain. The following week respondent again saw Dr. Gray, who continued the Ser-Ap-Es for an additional 30 days. The prescription was not filled for four days, however, because the staff lost it. Respondent went to the unit hospital twice more in December; both times he was seen by Captain Blunt, who prescribed Tiognolos (described as a muscle relaxant). For all of December, respondent remained in administrative segregation.

In early January, Gamble was told on two occasions that he would be sent to the "farm" if he did not return to work. He refused, nonetheless, claiming to be in too much pain. On January 7, 1974, he requested to go on sick call for his back pain and migraine headaches. After an initial refusal, he saw Captain Blunt who prescribed sodium salicylate (a *101 pain reliever) for seven days and Ser-Ap-Es for 30 days. Respondent returned to Captain Blunt on January 17 and January 25, and received renewals of the pain reliever prescription both times. Throughout the month, respondent was kept in administrative segregation.

On January 31, Gamble was brought before the prison disciplinary committee for his refusal to work in early January. He told the committee that he could not work because of his severe back pain and his high blood pressure. Captain Blunt testified that Gamble was in "first class" medical condition. The committee, with no further medical examination or testimony, placed respondent in solitary confinement.

Four days later, on February 4, at 8 a. m., respondent asked to see a doctor for chest pains and "blank outs." It was not until 7:30 that night that a medical assistant examined him and ordered him hospitalized. The following day a Dr. Heaton performed an electrocardiogram; one day later respondent was placed on Quinidine for treatment of irregular cardiac rhythm and moved to administrative segregation. On February 7, respondent again experienced pain in his chest, left arm, and back and asked to see a doctor. The guards refused. He asked again the next day. The guards again refused. Finally, on February 9, he was allowed to see Dr. Heaton,

who ordered the Quinidine continued for three more days. On February 11, he swore out his complaint.

## II

The gravamen of respondent's s 1983 complaint is that petitioners have subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth.[6] **290 See *102 Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). We therefore base our evaluation of respondent's complaint on those Amendments and our decisions interpreting them.

[2] [3] The history of the constitutional prohibition of "cruel and unusual punishments" has been recounted at length in prior opinions of the Court and need not be repeated here. See, e. g., Gregg v. Georgia, 428 U.S. 153, 169-173, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ. (hereinafter joint opinion)); see also Granucci, Nor Cruel and Unusual Punishment Inflicted: The Original Meaning, 57 Calif.L.Rev. 839 (1969). It suffices to note that the primary concern of the drafters was to proscribe "torture(s)" and other "barbar(ous)" methods of punishment. Id., at 842. Accordingly, this Court first applied the Eighth Amendment by comparing challenged methods of execution to concededly inhuman techniques of punishment. See Wilkerson v. Utah, 99 U.S. 130, 136, 25 L.Ed. 345 (1879) ("(I)t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by that amendment . . ."); In re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1890) ("Punishments are cruel when they involve torture or a lingering death . . .").

[4] [5] Our more recent cases, however, have held that the Amendment proscribes more than physically barbarous punishments. See, e. g., Gregg v. Georgia, supra, at 171, 96 S.Ct. at 2924 (joint opinion); Trop v. Dulles, 356 U.S. 86, 100-101, 78 S.Ct. 590, 597, 598, 2 L.Ed.2d 630 (1958); Weems v. United States, 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793 (1910). The Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ," Jackson v. Bishop, 404 F.2d 571, 579 (C.A.8 1968), against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, supra, at 101, 78 S.Ct. at 598; see also Gregg v. Georgia, supra, at 172-173, 96 S.Ct. at 2925 (joint opinion); *103 Weems v. United States, supra, 217 U.S.

at 378, 30 S.Ct. at 553, or which "involve the unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, 96 S.Ct. at 2925 (joint opinion); see also Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947); Wilkerson v. Utah, supra, 99 U.S. at 136.[7]

[6] [7] These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," In re Kemmler, supra, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. Gregg v. Georgia, supra, at 173, 96 S.Ct. at 2924-25 (joint opinion). The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation[8] codifying the com **291 mon-law *104 view that "(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself."[9]

[8] We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs[10] or by prison guards in intentionally denying or delaying access to medical *105 care[11] or intentionally interfering with the treatment once prescribed.[12] Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under s 1983.

[9] This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. In Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947), for example, the Court concluded that it was not unconstitutional to force a prisoner to undergo a second effort to electrocute him after a mechanical malfunction had thwarted the first attempt. Writing for the plurality, **292 Mr. Justice Reed reasoned that the second execution would not violate the Eighth Amendment because the first attempt was an "unforeseeable accident." Id., at 464, 67 S.Ct. 376. Mr.

Justice Frankfurter's concurrence, based solely on the Due Process Clause of the Fourteenth Amendment, concluded that since the first attempt had failed because of "an innocent misadventure," id., at 470, 67 S.Ct. at 379, the second would not be " 'repugnant to the conscience of mankind,' " id., at 471, 67 S.Ct. at 380, quoting Palko v. Connecticut, 302 U.S. 319, 323, 58 S.Ct. 149, 150, 82 L.Ed. 288 (1937).[13]

[10] [11] [12] Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be *106 "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.[14]

### III

[13] Against this backdrop, we now consider whether respondent's complaint states a cognizable s 1983 claim. The handwritten pro se document is to be liberally construed. As the Court unanimously held in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Id., at 520-521, 92 S.Ct. at 596, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

[14] *107 Even applying these liberal standards, however, Gamble's claims against Dr. Gray, both in his capacity as treating physician and as medical director of the Corrections Department, are not cognizable under s 1983. Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the

treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." Response to Pet. for Cert. 4; see also Brief for Respondent at 19. The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and **293 suggests a number of options that were not pursued. Id., at 17, 19. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." 516 F.2d, at 941. But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.[15] The Court of Appeals was in error in holding that the alleged insufficiency of the *108 medical treatment required reversal and remand. That portion of the judgment of the District Court should have been affirmed.[16]

The Court of Appeals focused primarily on the alleged actions of the doctors, and did not separately consider whether the allegations against the Director of the Department of Corrections, Estelle, and the warden of the prison, Husbands, stated a cause of action. Although we reverse the judgment as to the medical director, we remand the case to the Court of Appeals to allow it an opportunity to consider, in conformity with this opinion, whether a cause of action has been stated against the other prison officials.

It is so ordered.

Mr. Justice BLACKMUN concurs in the judgment of the Court.

Mr. Justice STEVENS, dissenting.

Most of what is said in the Court's opinion is entirely consistent with the way the lower federal courts have been processing claims that the medical treatment of prison inmates is so inadequate as to constitute the cruel and unusual punishment prohibited by the Eighth Amendment. I have no serious disagreement with the way

this area of the law has developed thus far, or with the probable impact of this opinion. Nevertheless, there are three reasons why I am unable to join it. First, insofar as the opinion orders the dismissal of the complaint against the chief medical *109 officer of the prison, it is not faithful to the rule normally applied in construing the allegations in a pleading prepared by an uncounseled inmate. Second, it does not adequately explain why the Court granted certiorari in this case. Third, it describes the State's duty to provide adequate medical care to prisoners in ambiguous terms which incorrectly relate to the subjective motivation of persons accused of violating the Eighth Amendment rather than to the standard of care required by the Constitution.

## I

The complaint represents a crude attempt to challenge the system of administering medical care in the prison where Gamble is confined. Fairly construed, the complaint alleges that he received a serious disabling back injury in November 1973, that the responsible prison authorities were indifferent to his medical needs, and that as a result of that indifference he has been mistreated and his condition has worsened.

The indifference is allegedly manifested, not merely by the failure or refusal to diagnose and treat his injury properly, but also by the conduct of the prison staff. Gamble was placed in solitary confinement for prolonged periods as punishment for **294 refusing to perform assigned work which he was physically unable to perform.[1] The only medical evidence presented to the disciplinary committee was the statement of a medical assistant that he was in first-class condition, when in fact he was suffering not only from the back sprain but from high blood pressure. Prison guards refused *110 to permit him to sleep in the bunk that a doctor had assigned. On at least one occasion a medical prescription was not filled for four days because it was lost by staff personnel. When he suffered chest pains and blackouts while in solitary, he was forced to wait 12 hours to see a doctor because clearance had to be obtained from the warden. His complaint also draws into question the character of the attention he received from the doctors and the inmate nurse in response to his 17 attempts to obtain proper diagnosis and treatment for his condition. However, apart from the medical director who saw him twice, he has not sued any of the individuals who saw him on these occasions. In short, he complains that the system as a whole is inadequate.

On the basis of Gamble's handwritten complaint it is impossible to assess the quality of the medical attention he received. As the Court points out, even if what he alleges is true, the doctors may be guilty of nothing more than negligence or malpractice. On the other hand, it is surely not inconceivable that an overworked, undermanned medical staff in a crowded prison[2] is following the expedient course of routinely prescribing nothing more than pain killers when a thorough diagnosis would disclose an obvious need for remedial treatment.[3] Three fine judges *111 sitting on the United States Court of Appeals for the Fifth Circuit[4] thought that enough had **295 been alleged to require some inquiry into the actual facts. If this Court meant what it said in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652, these judges were clearly right.[5]

*112 The Haines test is not whether the facts alleged in the complaint would entitle the plaintiff to relief. Rather, it is whether the Court can say with assurance on the basis of the complaint that, beyond any doubt, no set of facts could be proved that would entitle the plaintiff to relief.[6] The reasons for the Haines test are manifest. A pro se complaint provides an unsatisfactory foundation for deciding the merits of important questions because typically it is inartfully drawn, unclear, and equivocal, and because thorough pleadings, affidavits, and possibly an evidentiary hearing will usually bring out facts which simplify or make unnecessary the decision of questions presented by the naked complaint.[7]

*113 Admittedly, it is tempting to eliminate the meritless complaint at the pleading stage. Unfortunately, this "is another instance of judicial haste which in the long run makes waste," Dioguardi v. Durning, 139 F.2d 774, 775 (C.A.2 1944) (Clark, J.), cited with approval in Haines v. Kerner, supra, 404 U.S., at 521, 92 S.Ct., at 596. In the instant case, if the District Court had resisted the temptation of premature dismissal, **296 the case might long since have ended with the filing of medical records or affidavits demonstrating adequate treatment. Likewise, if the decision of the Fifth Circuit reinstating the complaint had been allowed to stand and the case had run its normal course, the litigation probably would have come to an end without the need for review by this Court. Even if the Fifth Circuit had wrongly decided the pleading issue, no great harm would have been done by requiring the State to produce its medical records and move for summary judgment. Instead, the case has been prolonged by two stages of appellate review, and is still not over: The case against two of the defendants may still proceed, and even the *114 claims against the prison doctors have not been disposed of with finality.[8]

The principal beneficiaries of today's decision will not be federal judges, very little of whose time will be saved, but rather the "writ-writers" within the prison walls, whose semiprofessional services will be in greater demand. I

have no doubt about the ability of such a semiprofessional to embellish this pleading with conclusory allegations which could be made in all good faith and which would foreclose a dismissal without any response from the State. It is unfortunate that today's decision will increase prisoners' dependence on those writ-writers. See Cruz v. Beto, 405 U.S. 319, 327 n. 7, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (Rehnquist, J., dissenting).

## II

Like the District Court's decision to dismiss the complaint, this Court's decision to hear this case, in violation of its normal practice of denying interlocutory review, see *115 R. Stern & E. Gressman, Supreme Court Practice 180 (4th ed. 1969), ill serves the interest of judicial economy.

Frankly, I was, and still am, puzzled by the Court's decision to grant certiorari.[9] If the Court merely thought the Fifth Circuit misapplied Haines v. Kerner by reading the complaint too liberally, the grant of certiorari is inexplicable. On the other hand, if the Court thought that instead of a pleading question, the case presented an important constitutional question about the State's duty to provide medical care to prisoners, the crude allegations of this complaint do not provide the kind of factual basis[10] the Court normally requires as a predicate for the adjudication of a novel and serious constitutional issue, see, e. g., **297 Rescue Army v. Municipal Court, 331 U.S. 549, 568-575, 67 S.Ct. 1409, 1419-1423, 91 L.Ed. 1666; Ellis v. Dixon, 349 U.S. 458, 464, 75 S.Ct. 850, 854, 99 L.Ed. 1231; Wainwright v. City of New Orleans, 392 U.S. 598, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (Harlan, J., concurring).[11] Moreover, as the Court notes, all the Courts of Appeals to consider the question have reached substantially the same conclusion that the Court adopts.

Ante, at 292 n. 14. Since the Court seldom takes a case merely to reaffirm settled law, I fail to understand why it has chosen to make this case an exception to its normal practice.

## *116 III

By its reference to the accidental character of the first unsuccessful attempt to electrocute the prisoner in Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422, see ante, at 291, and by its repeated references to "deliberate indifference" and the "intentional" denial of adequate medical care, I believe the Court improperly attaches significance to the subjective motivation of the defendant as a criterion for determining whether cruel and unusual punishment has been inflicted.[12] Subjective motivation may well determine what, if any, remedy is appropriate against a particular defendant. However, whether the constitutional standard has been violated should turn on the character of the punishment rather than the motivation of the individual who inflicted it.[13] Whether the conditions in Andersonville were the *117 product of design, negligence, or mere poverty, they were cruel and inhuman.

In sum, I remain convinced that the petition for certiorari should have been denied. It having been granted, I would affirm the judgment of the Court of Appeals.

## Parallel Citations

97 S.Ct. 285, 50 L.Ed.2d 251

Footnotes

\*       The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499, 505.

1       Title 42 U.S.C. s 1983 provides:
        "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2       It appears that the petitioner-defendants were not even aware of the suit until it reached the Court of Appeals. Tr. of Oral Arg. 7, 13-15. This probably resulted because the District Court dismissed the complaint simultaneously with granting leave to file it in forma pauperis.

**Estelle v. Gamble, 429 U.S. 97 (1976)**

97 S.Ct. 285, 50 L.Ed.2d 251

3    His complaint states that the bale weighed "6.00 pound." The Court of Appeals interpreted this to mean 600 pounds. 516 F.2d 937, 938 (CA5 1975).

4    The names and descriptions of the drugs administered to respondent are taken from his complaint, App. A-5 A-11, and his brief, at 19-20.

5    There are a number of terms in the complaint whose meaning is unclear and, with no answer from the State, must remain so. For example, "administrative segregation" is never defined. The Court of Appeals deemed it the equivalent of solitary confinement. 516 F.2d, at 939. We note, however, that Gamble stated he was in "administrative segregation" when he was in the "32A-7 five building" and "32A20 five building," but when he was in "solitary confinement," he was in "3102 five building."

6    The Eighth Amendment provides:
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
At oral argument, counsel for respondent agreed that his only claim was based on the Eighth Amendment. Tr. of Oral Arg. 42-43.

7    The Amendment also proscribes punishments grossly disproportionate to the severity of the crime, Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. at 2925 (1976) (joint opinion); Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 549 (1910), and it imposes substantive limits on what can be made criminal and punished, Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Neither of these principles is involved here.

8    See, e. g., Ala.Code Tit. 45, s 125 (1958); Alaska Stat. s 33.30.050 (1975); Ariz.Rev.Stat.Ann. s 31-201.01 (Supp.1975); Conn.Gen.Stat.Ann. s 18-7 (1975); Ga.Code Ann. s 77-309(e) (1973); Idaho Code s 20-209 (Supp.1976); Ill.Ann.Stat. c. 38, s 103-2 (1970); Ind.Ann.Stat. s 11-1-1.1-30.5 (1973); Kan.Stat.Ann. s 75-4249 (Supp.1975); Md.Ann.Code Art. 27 s 698 (1976); Mass.Ann.Laws, c. 127, s 90A (1974); Mich.Stat.Ann. s 14.84 (1969); Miss.Code Ann. s 47-1-57 (1972); Mo.Ann.Stat. s 221.120 (1962); Neb.Rev.Stat. s 83-181 (1971); N.H.Rev.Stat.Ann. s 619.9 (1974); N.M.Stat.Ann. s 42-2-4 (1972); Tenn.Code Ann. ss 41-318, 41-1115, 41-1226 (1975); Utah Code Ann. ss 64-9-13, 64-9-19, 64-9-20, 64-9-53 (1968); Va.Code Ann. ss 32-81, 32-82 (1973); W.Va.Code Ann. s 25-1-16 (Supp.1976); Wyo.Stat.Ann. s 18-299 (1959).
Many States have also adopted regulations which specify, in varying degrees of detail, the standards of medical care to be provided to prisoners. See Comment, The Rights of Prisoners to Medical Care and the Implications for Drug-Dependent Prisoners and Pretrial Detainees, 42 U.Chi.L.Rev. 705, 708-709 (1975).
Model correctional legislation and proposed minimum standards are all in accord. See American Law Institute, Model Penal Code ss 303.4, 304.5 (1962); National Advisory Commission on Criminal Justice Standards and Goals, Standards on Rights of Offenders, Standard 2.6 (1973); National Council on Crime and Delinquency, Model Act for the Protection of Rights of Prisoners, s 1(b) (1972); National Sheriffs' Association, Standards for Inmates' Legal Rights, Right No. 3 (1974); Fourth United Nations Congress on Prevention of Crime and Treatment of Offenders, Standard Minimum Rules for the Treatment of Prisoners, Rules 22-26 (1955). The foregoing may all be found in U.S. Dept. of Justice Law Enforcement Assistance Administration Compendium of Model Correctional Legislation and Standards (2d ed. 1975).

9    Spicer v. Williamson, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926).

10    See, e. g., Williams v. Vincent, 508 F.2d 541 (C.A.2 1974) (doctor's choosing the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to "deliberate indifference . . . rather than an exercise of professional judgment"); Thomas v. Pate, 493 F.2d 151, 158 (C.A.7), cert. denied sub nom. Thomas v. Cannon, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974) (injection of penicillin with knowledge that prisoner was allergic, and refusal of doctor to treat allergic reaction); Jones v. Lockhart, 484 F.2d 1192 (C.A.8 1973) (refusal of paramedic to provide treatment); Martinez v. Mancusi, 443 F.2d 921 (C.A.2 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971) (prison physician refuses to administer the prescribed pain killer and renders leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon).

11    See, e. g., Westlake v. Lucas, 537 F.2d 857 (C.A.6 1976); Thomas v. Pate, supra, 493 F.2d 151, at 158-159; Fitzke v. Shappell, 468 F.2d 1072 (C.A.6 1972); Hutchens v. Alabama, 466 F.2d 507 (C.A.5 1972); Riley v. Rhay, 407 F.2d 496 (C.A.9 1969); Edwards v. Duncan, 355 F.2d 993 (C.A.4 1966); Hughes v. Noble, 295 F.2d 495 (C.A.5 1961).

12    See, e. g., Wilbron v. Hutto, 509 F.2d 621, 622 (C.A.8 1975); Campbell v. Beto, 460 F.2d 765 (C.A.5 1972); Martinez v. Mancusi, supra ; Tolbert v. Eyman, 434 F.2d 625 (C.A.9 1970); Edwards v. Duncan, supra.

13    He noted, however, that "a series of abortive attempts" or "a single, cruelly willful attempt" would present a different case. 329 U.S., at 471, 67 S.Ct, at 380.

14    The Courts of Appeals are in essential agreement with this standard. All agree that mere allegations of malpractice do not state a

Estelle v. Gamble, 429 U.S. 97 (1976)
97 S.Ct. 285, 50 L.Ed.2d 251

claim, and, while their terminology regarding what is sufficient varies, their results are not inconsistent with the standard of deliberate indifference. See Page v. Sharpe, 487 F.2d 567, 569 (C.A.1 1973); Williams v. Vincent, supra, 508 F.2d 541, at 544 (uses the phrase "deliberate indifference"); Gittlemacker v. Prasse, 428 F.2d 1, 6 (C.A.3 1970); Russell v. Sheffer, 528 F.2d 318 (C.A.4 1975); Newman v. Alabama, 503 F.2d 1320, 1330 n. 14 (C.A.5 1974), cert. denied, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975) ("callous indifference"); Westlake v. Lucas, supra, 537 F.2d, at 860 ("deliberate indifference"); Thomas v. Pate, supra, 493 F.2d, at 158; Wilbron v. Hutto, supra, 509 F.2d, at 622 ("deliberate indifference"); Tolbert v. Eyman, supra, 434 F.2d, at 626; Dewell v. Lawson, 489 F.2d 877, 881-882 (C.A.10 1974).

15    Tex.Rev.Civ.Stat., Art. 6252-19, s 3 (Supp.1976). Petitioners assured the Court at argument that this statute can be used by prisoners to assert malpractice claims. Tr. of Oral Arg.

16    Contrary to Mr. Justice STEVENS' assertion in dissent, this case signals no retreat from Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In contrast to the general allegations in Haines, Gamble's complaint provides a detailed factual accounting of the treatment he received. By his exhaustive description he renders speculation unnecessary. It is apparent from his complaint that he received extensive medical care and that the doctors were not indifferent to his needs.

1    In his complaint, Gamble alleged that he had been placed in administrative segregation and remained there through December and January. At the end of January he was placed in solitary confinement. In an affidavit filed in the Court of Appeals the following December, see n. 8, infra, Gamble alleged that with the exception of one day in which he was taken out of solitary to be brought before the disciplinary committee he had remained in solitary up to the date of the affidavit.

2    According to a state legislative report quoted by the Court of Appeals, the Texas Department of Corrections has had at various times one to three doctors to care for 17,000 inmates with occasional part-time help. 516 F.2d 937, 940-941, n. 1 (1975).

3    This poorly drafted complaint attempts to describe conditions which resemble those reported in other prison systems. For instance, a study of the Pennsylvania prison system reported:
"When ill, the prisoner's point of contact with a prison's health care program is the sick-call line. Access may be barred by a guard, who refuses to give the convict a hospital pass out of whimsy or prejudice, or in light of a history of undiagnosed complaints. At sick call the convict commonly first sees a civilian paraprofessional or a nurse, who may treat the case with a placebo without actual examination, history-taking or recorded diagnosis. Even seeing the doctor at some prisons produces no more than aspirin for symptoms, such as dizziness and fainting, which have persisted for years." Health Law Project, University of Pennsylvania, Health Care and Conditions in Pennsylvania's State Prisons, in American Bar Association Commission on Correctional Facilities and Services, Medical and Health Care in Jails, Prisons, and Other Correctional Facilities: A Compilation of Standards and Materials, 71, 81-82 (Aug. 1974).
A legislative report on California prisons found:
"By far, the area with the greatest problem at the hospital (at one major prison), and perhaps at all the hospitals, was that of the abusive doctor-patient relationship. Although the indifference of M.T.A.s (medical technical assistants) toward medical complaints by inmates is not unique at Folsom, and has been reported continuously elsewhere, the calloused and frequently hostile attitude exhibited by the doctors is uniquely reprehensible. . . .
"Typical complaints against (one doctor) were that he would . . . not adequately diagnose or treat a patient who was a disciplinary problem at the prison . . . ." Assembly Select Committee on Prison Reform and Rehabilitation, An Examination of California's Prison Hospitals, 60-61 (1972).
These statements by responsible observers demonstrate that it is far from fanciful to read a prisoner's complaint as alleging that only pro forma treatment was provided.

4    The panel included Mr. Justice Clark, a retired member of this Court, sitting by designation, and Circuit Judges Goldberg and Ainsworth.

5    In Haines a unanimous Supreme Court admonished the federal judiciary to be especially solicitous of the problems of the uneducated inmate seeking to litigate on his own behalf. The Court said:
"Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). See Dioguardi v. Durning, 139 F.2d 774 (C.A.2 1944)." 404 U.S., at 520-521, 92 S.Ct., at 595-596.
Under that test the complaint should not have been dismissed without, at the very minimum, requiring some response from the defendants. It appears from the record that although the complaint was filed in February, instead of causing it to be served on the defendants as required by Fed.Rule Civ.Proc. 4, the Clerk of the District Court referred it to a magistrate who decided in June that the case should be dismissed before any of the normal procedures were even commenced. At least one Circuit has held that dismissal without service on the defendants is improper, Nichols v. Schubert, 499 F.2d 946 (C.A.7 1974). The Court's disposition

of this case should not be taken as an endorsement of this practice since the question was not raised by the parties.

6    This is the test actually applied in Haines, for although the Court ordered the complaint reinstated, it expressly "intimate(d) no view whatever on the merits of petitioner's allegations," 404 U.S., at 521, 92 S.Ct., at 596. It is significant that the Court took this approach despite being pressed by the State to decide the merits. As in this case, the State argued forcefully that the facts alleged in the complaint did not amount to a constitutional violation. (Only in one footnote in its 51-page brief did the State discuss the pleading question, Brief for Respondents 22-23, n. 20, in No. 70-5025, O.T. 1971.) Yet, this Court devoted not a single word of its opinion to answering the argument that no constitutional violation was alleged.

7    Thus, Haines teaches that the decision on the merits of the complaint should normally be postponed until the facts have been ascertained. The same approach was taken in Polk Co. v. Glover, 305 U.S. 5, 59 S.Ct. 15, 83 L.Ed. 6, in which the Court reversed the dismissal of a complaint, without intimating any view of the constitutional issues, on "(t)he salutary principle that the essential facts should be determined before passing upon grave constitutional questions . . . ." Id., at 10, 59 S.Ct. at 17. See also Borden's Co. v. Baldwin, 293 U.S. 194, 213, 55 S.Ct. 187, 193, 79 L.Ed. 281 (Cardozo and Stone, JJ., concurring in result). This approach potentially avoids the necessity of ever deciding the constitutional issue since the facts as proved may remove any constitutional question. Alternatively, a more concrete record will be available on which to decide the constitutional issues. See generally Rescue Army v. Municipal Court, 331 U.S. 549, 574-575, 67 S.Ct. 1409, 1422, 1423, 19 L.Ed. 1666. Even when constitutional principles are not involved, it is important that "the conceptual legal theories be explored and assayed in the light of actual facts, not as a pleader's supposition," so that courts may avoid "elucidating legal responsibilities as to facts which may never be." Shull v. Pilot Life Ins. Co., 313 F.2d 445, 447 (C.A.5 1963).

8    In an affidavit filed in the Court of Appeals, Gamble states that he has been transferred to another prison, placed in solitary confinement, and denied any medical care at all. These conditions allegedly were continuing on December 3, 1974, the date of the affidavit. The Court of Appeals apparently considered these allegations, as shown by a reference to "the fact that (Gamble) has spent months in solitary confinement without medical care and stands a good chance of remaining that way without intervention," 516 F.2d, at 941. Presumably the Court's remand does not bar Gamble from pursuing these charges, if necessary through filing a new complaint or formal amendment of the present complaint. The original complaint also alleged that prison officials failed to comply with a doctor's order to move Gamble to a lower bunk, that they put him in solitary confinement when he claimed to be physically unable to work, and that they refused to allow him to see a doctor for two days while he was in solitary. Gamble's medical condition is relevant to all these allegations. It is therefore probable that the medical records will be produced and that testimony will be elicited about Gamble's medical care. If the evidence should show that he in fact sustained a serious injury and received only pro forma care, he would surely be allowed to amend his pleading to reassert a claim against one or more of the prison doctors.

9    "The only remarkable thing about this case is its presence in this Court. For the case involves no more than the application of well-settled principles to a familiar situation, and has little significance except for the respondent. Why certiorari was granted is a mystery to me particularly at a time when the Court is thought by many to be burdened by too heavy a caseload." Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 189, 93 S.Ct. 1455, 1460, 36 L.Ed.2d 142 (Stewart, J., dissenting).

10   As this Court notes, ante, at 289 n. 5, even the meaning of some of the terms used in the complaint is unclear.

11   If this was the reason for granting certiorari, the writ should have been dismissed as improvidently granted when it became clear at oral argument that the parties agreed on the constitutional standard and disagreed only as to its application to the allegations of this particular complaint. See Tr. of Oral Arg. 38, 48.

12   As the four dissenting Justices in Resweber pointed out:
     "The intent of the executioner cannot lessen the torture or excuse the result. It was the statutory duty of the state officials to make sure that there was no failure." 329 U.S., at 477, 67 S.Ct., at 382 (Burton, J., joined by Douglas, Murphy, and Rutledge, JJ.).

13   The Court indicates the Eighth Amendment is violated "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Ante, at 291. If this is meant to indicate that intent is a necessary part of an Eighth Amendment violation, I disagree. If a State elects to impose imprisonment as a punishment for crime, I believe it has an obligation to provide the persons in its custody with a health care system which meets minimal standards of adequacy. As a part of that basic obligation, the State and its agents have an affirmative duty to provide reasonable access to medical care, to provide competent, diligent medical personnel, and to ensure that prescribed care is in fact delivered. For denial of medical care is surely not part of the punishment which civilized nations may impose for crime.
     Of course, not every instance of improper health care violates the Eighth Amendment. Like the rest of us, prisoners must take the risk that a competent, diligent physician will make an error. Such an error may give rise to a tort claim but not necessarily to a constitutional claim. But when the State adds to this risk, as by providing a physician who does not meet minimum standards of competence or diligence or who cannot give adequate care because of an excessive caseload or inadequate facilities, then the

**Estelle v. Gamble, 429 U.S. 97 (1976)**

97 S.Ct. 285, 50 L.Ed.2d 251

prisoner may suffer from a breach of the State's constitutional duty.

---

**End of Document**                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.

Evans v. St. Lucie County Jail, 448 Fed.Appx. 971 (2011)

448 Fed.Appx. 971
This case was not selected for publication in the
Federal Reporter.
Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Eleventh Circuit Rules
36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11
Rule 36-3)
United States Court of Appeals,
Eleventh Circuit.

Kenneth Earl EVANS, Plaintiff–Appellant,
v.
ST. LUCIE COUNTY JAIL, Ken Mascara, Jane
Doe, Dr. Zambrano, a.k.a. John Doe, Prison
Health Services, Nurse Tabitha,
Defendants–Appellees.

No. 11–12287 | Non–Argument Calendar. | Dec. 13,
2011.

**Synopsis**
**Background:** Inmate brought pro se § 1983 action
alleging unconstitutional conditions of confinement and
deliberate indifference to serious medical needs against
multiple defendants. Through a series of orders, the
United States District Court for the Southern District of
Florida, No. 2:09-cv-14278-DLG, dismissed the
complaint in its entirety, and inmate appealed.

**Holdings:** The Court of Appeals held that:

[1] claims arose under Fourteenth Amendment due process
clause and Eighth Amendment since conditions and
events spanned inmate's time as pre-trial detainee and
convicted prisoner;

[2] double-capacity cell with two additional inmates and
two mattresses on floor did not rise to unconstitutional
condition of confinement;

[3] allegations regarding delay in obtaining medical
attention and doctor's minimal examination and treatment
did not rise to deliberate indifference to serious medical
needs.

Affirmed.

West Headnotes (7)

[1]     **Constitutional Law**
        ⬥Conditions
        **Constitutional Law**
        ⬥Medical treatment
        **Constitutional Law**
        ⬥Conditions of confinement in general
        **Constitutional Law**
        ⬥Medical care and treatment
        **Prisons**
        ⬥Particular violations, punishments,
        deprivations, and conditions
        **Prisons**
        ⬥Particular violations, punishments,
        deprivations, and conditions
        **Sentencing and Punishment**
        ⬥Conditions of Confinement
        **Sentencing and Punishment**
        ⬥Medical care and treatment

        Inmate's § 1983 claims for unconstitutional
        conditions of confinement and deliberate
        indifference to serious medical needs arose
        under due process clause of the Fourteenth
        Amendment and the Eighth Amendment where
        prison conditions and events that underlay
        inmate's complaint spanned inmate's time both
        as pre-trial detainee and as convicted prisoner.
        U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. §
        1983.

        3 Cases that cite this headnote

[2]     **Constitutional Law**
        ⬥Conditions of confinement in general
        **Prisons**
        ⬥Hazardous and unhealthful conditions;
        housing
        **Prisons**
        ⬥Clothing and grooming; bedding and
        sleeping conditions
        **Sentencing and Punishment**
        ⬥Housing

        Double-capacity cell with two additional
        inmates and two mattresses on floor did not rise

to unconstitutional condition of confinement violative of Fourteenth Amendment due process or Eighth Amendment for purposes of inmate's § 1983 civil rights action, although inmate claimed that he tripped on mattress and hurt his back and inmate was in cell with mattresses for roughly sixty days. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

**[3]**   **Constitutional Law**
⬤⬤Conditions of confinement in general
**Prisons**
⬤⬤Hazardous and unhealthful conditions; housing
**Prisons**
⬤⬤Clothing and grooming; bedding and sleeping conditions
**Sentencing and Punishment**
⬤⬤Sanitation

Double-capacity cell with two mattresses on floor so that inmate whose bed was directly in front of toilet was allegedly subjected to having other inmates use toilet practically in his face did not rise to level of unconstitutional condition violative of Fourteenth Amendment due process or Eighth Amendment for purposes of inmate's § 1983 civil rights action absent further allegations suggesting that basic sanitation was adversely affected. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

**[4]**   **Constitutional Law**
⬤⬤Conditions of confinement in general
**Prisons**
⬤⬤Hazardous and unhealthful conditions; housing
**Prisons**
⬤⬤Clothing and grooming; bedding and sleeping conditions
**Sentencing and Punishment**
⬤⬤Housing

Alleged fire hazard from double-capacity cell with two mattresses on floor did not state a claim for unconstitutional condition of confinement violative of Fourteenth Amendment due process or Eighth Amendment in inmate's § 1983 civil rights action, even if mattresses' location in cell posed unreasonable risk of serious damage, where complaint's allegations did not show that those who placed mattresses or directed mattresses be placed in cell had sufficiently culpable state of mind. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

1 Cases that cite this headnote

**[5]**   **Constitutional Law**
⬤⬤Medical care and treatment
**Prisons**
⬤⬤Particular Conditions and Treatments
**Sentencing and Punishment**
⬤⬤Medical care and treatment

Inmate's allegations in § 1983 action regarding delay in obtaining medical attention did not rise to deliberate indifference to serious medical needs violative of Fourteenth Amendment due process or Eighth Amendment, although inmate claimed after he hurt his back, he submitted three internal requests for doctor visit that were ignored and did not see doctor until after he sent complaint to Executive Office of the Governor; inmate did not allege his back injury caused him significant pain or limited his movement during the time frame of alleged delay, so did not support inference that layperson would have easily realized need for medical attention. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote

**[6]**   **Constitutional Law**
⬤⬤Medical care and treatment
**Prisons**
⬤⬤Particular Conditions and Treatments
**Sentencing and Punishment**
⬤⬤Medical care and treatment

Inmate's allegations in § 1983 action regarding delay in arranging medical visit and minimal

Evans v. St. Lucie County Jail, 448 Fed.Appx. 971 (2011)

examination and treatment by doctor of back injury did not rise to deliberate indifference to serious medical needs violative of Fourteenth Amendment due process or Eighth Amendment, although inmate claimed doctor asked him to do a series of bends and then provided sheet of paper describing exercises for lower back pain. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983.

2 Cases that cite this headnote

[7]     **Federal Courts**
        ⊙⊶Necessity for New Trial or Further Proceedings Below

Appellate court remand was not required for district court to make reasonable effort to locate government defendants who had left employment and were not served, or to indicate that court-appointed agent had made reasonable attempts to locate the former employees, in inmate's § 1983 civil rights action, where inmate had failed to state a claim of constitutional violation and remand would be purely academic exercise, even though the record lacked evidence of the requisite finding prior to dismissal. 42 U.S.C.A. § 1983.

**Attorneys and Law Firms**

***972** Kenneth Earl Evans, Raiford, FL, pro se.

Pam Bondi, Office of the Attorney General, Miami, FL, for Defendants–Appellees.

Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 2:09–cv–14278–DLG.

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

**Opinion**

***973** PER CURIAM:

Kenneth Earl Evans, proceeding *pro se,* appeals the district court's *sua sponte* dismissal of his 42 U.S.C. § 1983 complaint, in which he alleged claims of unconstitutional conditions of confinement and deliberate indifference to serious medical needs. Evans asserted these claims against various defendants, and through a series of orders, the district court dismissed the complaint in its entirety, including for failure to state a claim. On appeal, Evans argues that the district court erred in doing so, raising a number of arguments. After careful review, we affirm.

Under 28 U.S.C. § 1915A, a district court is required to dismiss *sua sponte* a civil complaint filed by a prisoner seeking redress from a governmental entity or a governmental employee or officer if the complaint "fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915A(a), (b)(1). We review *de novo* such a dismissal, using the same standards that govern dismissals under Federal Rule of Civil Procedure 12(b)(6). *Leal v. Ga. Dep't of Corr.,* 254 F.3d 1276, 1279 (11th Cir.2001). Thus, we accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Timson v. Sampson,* 518 F.3d 870, 872 (11th Cir.2008). We ask whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). We liberally construe *pro se* pleadings. *See Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir.2004).

[1] To state a cause of action under § 1983, a plaintiff must allege that (1) there was an act or omission that deprived him of a constitutional right, privilege, or immunity and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir.1995). Evans asserts claims of unconstitutional conditions of confinement and deliberate indifference to serious medical needs. Because the prison conditions and the events that underlie Evans's complaint span his time both as a pre-trial detainee and as a convicted prisoner, his claims arise under the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment. *See Harris v. Coweta Cnty.,* 21 F.3d 388, 393 n. 6 (11th Cir.1994). We note, however, that "the standard for providing basic human needs to those incarcerated or in detention is the same under both [provisions of the Constitution]." *Marsh v. Butler Cnty.,*

*Ala.,* 268 F.3d 1014, 1024 n. 5 (11th Cir.2001) (en banc).

The Supreme Court has recognized that a prisoner may challenge a condition of confinement, *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), as well as a failure to provide medical care, *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). "Each of these claims requires a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.' " *Thomas v. Bryant,* 614 F.3d 1288, 1304 (11th Cir.2010) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994)).

The Supreme Court has set a high bar for the objective component of a claim challenging a condition of confinement. **\*974** The Court has observed that "the Constitution does not mandate comfortable prisons." *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir.2004) (quoting *Rhodes,* 452 U.S. at 349, 101 S.Ct. at 2400). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' " *Id.* (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required." *Thomas,* 614 F.3d at 1304 (quoting *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)). A prison condition is unconstitutional only if it deprives the plaintiff of a human need, *Jordan v. Doe,* 38 F.3d 1559, 1565 (11th Cir.1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 305, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991)), or otherwise " 'pose[s] an unreasonable risk of serious damage to his future health' or safety," *Chandler,* 379 F.3d at 1289 (quoting *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993)).

The objective component of a claim alleging inadequate medical care is also difficult to meet. First, a plaintiff must demonstrate "an objectively serious medical need, one that, if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (quotations omitted). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.2003) (quotation omitted). Second, the plaintiff must show that the response "was poor enough to constitute an unnecessary and wanton infliction of pain." *Taylor,* 221 F.3d at 1258 (quotation omitted). The level of

care exercised by the official must be worse than mere "accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Id.* (quotations omitted).

As set out above, the subjective component of both types of claims requires that "the official had a 'sufficiently culpable state of mind.' " *Thomas,* 614 F.3d at 1304 (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977). More specifically, "in both prison conditions and medical needs cases, the relevant state of mind is deliberate indifference." *Id.* (citing *Wilson,* 501 U.S. at 303, 111 S.Ct. at 2327). This has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow,* 320 F.3d at 1245 (quotations omitted). The Supreme Court has emphasized that the official must have been actually aware of the risk of harm: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

Finally, "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003) (quotation omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* The causal connection may be established by showing that (1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) **\*975** the facts support an "inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quotations omitted).

[2] [3] Reviewing Evans's complaint in light of these principles, we conclude that Evans has failed to state a claim of unconstitutional condition of confinement. Evans's claim rests on the allegation that on March 20, 2008—when two additional inmates were placed in his cell such that it was at double capacity—two mattresses were also put on the floor of the cell.[1] Evans, who was not required to sleep on a mattress, states that on the following day, as he was going to breakfast, he tripped on one of the mattresses and hurt his back. We recognize that putting mattresses on the floor of an overcrowded prison

cell may give rise incidents that cause injury, such as the one that Evans has alleged. However, the placement of mattresses in an overcrowded cell is not, in and of itself, an "extreme" condition that poses "an unreasonable risk of serious damage." *Chandler, 379 F.3d at 1289* (quotation omitted). The Supreme Court has rejected the notion that "double celling"—putting twice the number of prisoners in a cell—is unconstitutional, *Rhodes, 452 U.S. at 347, 101 S.Ct. 2392*, and we have held that in an overcrowded facility, officials may require inmates to sleep on mattresses, at least temporarily. *Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.1985); see also Brown v. Crawford, 906 F.2d 667, 668, 672 (11th Cir.1990).²*

[4] Neither is Evans's assertion that the mattresses constituted a fire hazard sufficient to state a claim. Even if we were to conclude that the mattresses' location in the cell posed "an unreasonable risk of serious damage" in case of a fire, *Chandler, 379 F.3d at 1289* (quotation omitted), we do not find sufficient factual allegations in the complaint to show that those who placed the mattresses, or otherwise directed that the mattresses be put in the cell, had a "sufficiently culpable state of mind." *Farmer, 511 U.S. at 834, 114 S.Ct. at 1977.* Under these circumstances, we cannot say that Evans has stated a claim of unconstitutional condition of confinement.³

Evans's claim of inadequate medical care has two aspects. First, he alleges a delay in receiving medical attention. Evans avers that after the incident, he submitted three internal requests for a doctor's visit, each of which were ignored. Evans states that he did not see a doctor until May 13, 2008, after he sent a complaint to the Executive Office of the Governor. Second, he avers that the doctor that he did see failed to provide an appropriate diagnosis and adequate treatment. Evans states that the doctor "acted indifferent and uncaring." According to Evans, the doctor simply asked him to do "a series of bends" and then provided him with a sheet *976 of paper describing various exercises for lower back pain.

[5] Once again, these allegations do not state a claim of unconstitutional conduct. As we have noted, a plaintiff must allege "an objectively serious medical need, one

that, if left unattended, poses a substantial risk of serious harm." *Taylor, 221 F.3d at 1258.* Evans's complaint indicates that Evans hurt his back, but it does not otherwise state that during the relevant time period—from March 21, 2008 to May 13, 2008—the condition caused him significant pain or otherwise limited his movement in any way. Evans's complaint is thus devoid of the "factual enhancement," *Iqbal, 129 S.Ct. at 1949* (quotation omitted), that would reasonably support the inference that "even a lay person would [have] easily recognize[d] the necessity for a doctor's attention." *Farrow, 320 F.3d at 1243.*

[6] Separately, we also note that the complaint does not allege sufficient facts to show that the level of care exercised by those were in charge of processing medical requests, and by the doctor who saw Evans, was worse than "accidental inadequacy, negligence ... or even medical malpractice actionable under state law." *Taylor, 221 F.3d at 1258.* Assuming, as we must, that Evans's allegations are true, we readily acknowledge that the delay in arranging a medical visit and the doctor's conduct during that visit leave much to be desired. This is not enough, however, to support a claim of unconstitutional conduct. *See id.*

[7] Because Evans has not alleged misconduct of a constitutional magnitude, we conclude that it was proper for the district court to dismiss his complaint, and we do not reach Evans's remaining arguments. *See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1293 n. 3 (11th Cir.2010)* (noting that a district court's decision may be affirmed on any ground that finds support in the record).⁴ For the reasons set forth above, we affirm the district court's decision to dismiss Evans's complaint.

**AFFIRMED.**

**Parallel Citations**

2011 WL 6156831 (C.A.11 (Fla.))

---

Footnotes

1     Evans also states in his complaint that his bed was "directly in front of the toilet" and that he was "subjected to having other inmates using the toilet practically in his face." In the absence of any further allegations suggesting that basic sanitation was adversely affected, this does not rise to the level of a constitutional violation.

2     Evans states that he was moved to another correctional facility on May 25, 2008. Thus, he was in the cell with the mattresses for roughly 60 days. *Cf. Bell v. Wolfish, 441 U.S. 520, 543, 99 S.Ct. 1861, 1876, 60 L.Ed.2d 447 (1979)* (rejecting the argument that requiring a detainee to share a small sleeping space for 60 days violates the Constitution).

3     To the extent that we must taken into account "obvious alternative explanation[s]" in determining whether a claim has been stated, *Iqbal*, 129 S.Ct. at 1951 (quotation omitted), we note that Evans's factual allegations equally support the possibility that the officials were simply negligent.

4     We take this opportunity, however, to make two observations. First, Evans states on appeal that the district court failed to consider his claims as asserted against Prison Health Services. We note that while the magistrate judge's report and recommendation (R & R) and the district court's order adopting the R & R did not discuss those claims, Evans did identify this issue in a motion for reconsideration, which the district court denied. We are therefore satisfied that the district court did give consideration to those particular claims.

      Second, the magistrate judge recommended, and the district court ordered, that Evans's claims against Nurse Tabitha and Dr. Zambrano be dismissed for failure to serve process because Evans could not provide the current addresses of these two individuals. The magistrate judge noted that both had left their employment at the St. Lucie County Jail. We have recently indicated that in such a situation, a complaint should not be dismissed unless the district court finds that the court-appointed agent has made a reasonable effort to identify the location of the defendant. *Richardson v. Johnson,* 598 F.3d 734, 739–40 (11th Cir.2010).

      The record in this case does not indicate that the district court made such a finding. Under these circumstances, it might be appropriate to vacate the dismissal of Evans's claims against Tabitha and Zambrano and remand the case for further proceedings. *See id.* However, because Evans has failed to state a claim of constitutional violation, a remand would be a purely academic exercise. The principle that a district court's decision may be affirmed on any ground that is supported by the record allows us to relieve the district court of the need to undertake this exercise. *See Am. Dental Ass'n,* 605 F.3d at 1293 n. 3.

---

**End of Document**                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.