UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CALEEM LARONDE,

    Plaintiff,

v.                                                                    Case No: 3:13cv4/MCR/CJK

CHARLES MASON, et al.,

    Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

    This prisoner civil rights case is before the court upon plaintiff's motion for relief from judgment, filed under Rule 60(b)(3) of the Federal Rules of Civil Procedure. (Doc. 185). Defendants have responded in opposition to the motion. (Doc. 187). Plaintiff has replied. (Doc. 190). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.3. After careful consideration, the undersigned concludes that plaintiff's motion should be denied.

BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff initiated this action on December 31, 2012, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). Plaintiff filed an amended complaint on February 19, 2013, and a second amended complaint on September 25, 2013.

(Docs. 5 and 48, respectively).  The case proceeded through discovery and, on September 11, 2014, defendants filed a motion for summary judgment.  (Doc. 122).  Prior to a ruling on the motion, pro bono counsel, James Cook, a participant in this court's Volunteer Lawyer Program, appeared on plaintiff's behalf.  (Doc. 124).  Discovery was reopened (doc. 137), and plaintiff was allowed to amend his complaint again, with the assistance of counsel.  (Docs. 144, 150).  Various discovery motions were filed, including a motion for sanctions filed by defendants.  After disposition of some, but not all, of these motions, plaintiff's counsel filed a notice of settlement on April 6, 2015.  (Doc. 162).  The undersigned issued a report and recommendation that this case be dismissed pursuant to the settlement.  (Doc. 163).

Two weeks later, plaintiff filed two *pro se* motions – one to terminate his counsel and the other to appoint new counsel.  (Docs. 165, 166).  Plaintiff's motion to terminate counsel complained that Mr. Cook had not deposed key witnesses, had not deposed all of the defendants, and had not obtained a medical expert.  (Doc. 165).  The *pro se* motions were stricken from the docket pursuant to Local Rule 11.1, because plaintiff was represented by counsel at the time he filed them.  (Doc. 167).  Defendants moved to enforce the settlement agreement.  (Doc. 169).  Plaintiff's counsel moved to withdraw.  (Doc. 170).  The court allowed Mr. Cook to withdraw (doc. 174), and scheduled an evidentiary hearing on defendants' motion to enforce the settlement agreement.  (Doc. 176).  Prior to the hearing, defendants withdrew their motion.  (Doc. 179).  On June 5, 2015, defendants filed a Notice of Settlement.  (Doc. 180).  On June 16, 2015, the parties filed a Joint Stipulation of Voluntary Dismissal With Prejudice signed by plaintiff and defendants' counsel on June 16, 2015.  (Doc. 181). On June 17, 2015, the undersigned issued a report and recommendation that this case be dismissed with prejudice pursuant to the parties' joint stipulation of dismissal.

(Doc. 182). After the objection period passed with no objections, the district judge adopted the recommendation and dismissed this case on July 20, 2015. (Doc. 183). Judgment was entered that date. (Doc. 184).

On September 17, 2015, plaintiff filed the now-pending motion for relief from judgment under Fed. R. Civ. P. 60(b)(3), on the grounds of "misrepresentation, fraud and violation of 28 U.S.C.A. § 1915(b)(2)". (Doc. 185). Plaintiff's motion does not challenge the validity of the settlement agreement; rather, plaintiff argues that the defendants have not complied with its terms. Specifically, plaintiff alleges that the settlement agreement provided that he would receive $1,809.18 into his inmate trust account and that the entirety of the funds would be used to satisfy liens totaling $1,809.18, which he had accumulated as of April 3, 2015. (Doc. 185, p. 1 and Ex. A). Plaintiff asserts that $1,809.18 was deposited into his inmate trust account on June 11, 2015, and was immediately deducted to satisfy the liens. (Doc. 185, p. 1 and Ex. B). Plaintiff complains that one of the liens, a state court litigation lien in the amount of $385.29 imposed in Leon County Circuit Court Case Number 2012-CA-2410, was posted prior to April 3, 2015, and was supposedly satisfied with the settlement funds on June 11, 2015; however, since then the Florida Department of Corrections (FDC) has continued to deduct funds from his inmate account toward payment of that lien. (Doc. 185, Ex. B, p. 1). Specifically, $10.00 was deducted from plaintiff's account on July 18, 2015, and another $10.00 was deducted from his account on August 5, 2015, both for the Leon County Circuit Court case. (Doc. 185, p. 1). Plaintiff also complains that $10.00 of the settlement funds was improperly used to pay liens for two $5.00 medical co-payments imposed <u>after</u> April 3, 2015 (lien number 0402151010CS posted on April 4, 2015, and lien number 0525151015CS posted on May 26, 2015). (Doc. 185, pp. 1-2 and Ex. B). Lastly, plaintiff complains that the

FDC used $917.00 of the settlement funds to make lump sum payments satisfying liens in three of his federal cases. Plaintiff argues that this violates 28 U.S.C. § 1915(b)(2), because that provision requires a prisoner to make only monthly payments of 20 percent of the preceding month's income. (Doc. 185, p. 2). Based on these allegations, plaintiff argues that he is entitled to relief from the judgment due to fraud, misrepresentation, and violation of § 1915(e)(2).

The court reviewed plaintiff's motion and attachments, and issued an order requiring defendants to respond. In addition to addressing plaintiff's allegations, the order also required defendants to explain why plaintiff's inmate account statement reflected a $217.00 lien payment on June 11, 2015, toward the filing fee balance in this case, yet that money had not been received by the court. (Doc. 186).

Defendants' response addresses each of plaintiff's points in turn, provides an accounting of the relevant transactions, and explains that the defendants have fully complied with the terms of the settlement agreement. (Doc. 187).

Three weeks later plaintiff filed a pleading titled "Reply To Defendants' Response To Plaintiff's Motion For Relief from Judgement [sic] And Final Order". (Doc. 190). Plaintiff's reply does not respond to, or dispute, defendants' accounting. Instead, plaintiff, for the first time, pivots to challenge the validity of the settlement agreement on grounds of "duress". (Doc. 190).

## DISCUSSION

Rule 60 of the Federal Rules of Civil Procedure allows a party relief from final judgment for certain enumerated grounds, such as fraud, misrepresentation, or misconduct by an opposing party. Fed. R. Civ. P. 60(b)(3). "[T]he movant must 'prove[ ] by clear and convcinging evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct.'" *Cox Nuclear*

*Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007) (alteration in original) (*quoting Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1287 (11th Cir. 2000)).  Additionally, the moving party must show that the adverse party's conduct prevented the movant from "fully and fairly presenting his case. . . ."  *Cox* at 1314 (internal quotation marks and citation omitted).  Rule 60(b) also has a catch-all provision that permits a court to vacate a judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  The Eleventh Circuit "has carefully constrained this open-ended language" to cover only those circumstances that are "sufficiently extraordinary to warrant relief."  *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1379, 1355 (11th Cir. 2014) (internal quotation marks and citation omitted).  Whether to grant Rule 60(b) relief is "a matter for the district court's sound discretion."  *Id.* (internal quotation marks and citation omitted).

Plaintiff's Claim of Fraud

Plaintiff's claim of fraud is conclusively refuted by the record.  Rita Odom, a custodian of the FDC's Inmate Trust Fund records and a Professional Accountant Supervisor at Inmate Trust Fund, has submitted a delcaration and supporting documentation.  (Doc. 187, Ex. A, Odom Decl.).  Ms. Odom explains with regard to the state litigation in Leon County Circuit Court Case No. 2012-CA-2410, that the original lien amount was $435.00; for which $39.71 was paid, reducing the lien to $395.29.  (Odom Decl. 2 ¶ 9; *see also* Doc. 187, Ex. B).  The lien recorded on April 3, 2015, erroneously stated the original amount as $425.00, with an amount still owed of $385.29, which was incorrect by $10.00.  (Doc. 185, Ex. J; *see also* Doc. 187, Ex. D).  When the $385.29 was paid out of the settlement funds, a $10.00 balance remained outstanding in plaintiff's Leon County case.  (Doc. 187, Exs. B, D).  On July 18, 2015, the additional $10.00 was paid to Leon County from plaintiff's inmate

account. (Doc. 187, Ex. A, Odom Decl. 12; *see also* Doc. 187, Exs. C, D). Because the FDC later felt it was an error to require plaintiff to pay the $10.00 since it was not part of the settlement, the FDC credited plaintiff's inmate account for the $10.00 on August 5, 2015. The additional $10.00 deduction appearing on August 5, 2015 for the Leon County case was also credited. (Doc. 187, Ex. A, Odom Decl. 12). The net effect of these transactions was to provide plaintiff a windfall of $10.00. Plaintiff's $435.00 lien in Leon County Circuit Court Case No. 2012-CA-2410 was satisfied in full, with plaintiff having paid only $425.00.

Ms. Odom's declaration and supporting documents also establish that the medical co-payments from April 4, 2015, and May 26, 2015, each totaling $5.00 were paid in error on June 11, 2015. (Odom Decl. 2, 6). These co-payments were immediately reversed on June 11, 2015 (Odom Decl. 12) and, after $10.00 was subsequently deducted (properly) from the $50.00 deposit plaintiff received on July 18, 2015, to satisfy those medical liens (Odom Decl. 12), the FDC, as a courtesy to plaintiff for the prior error and confusion, not only credited the $10.00 back to plaintiff's account on September 10, 2015, but also voided the liens, resulting in another $10.00 windfall to plaintiff (Odom Decl. 14).

The issue of plaintiff's final payment in this case ($217.00) has also been resolved. After reviewing defendants' response and documentation, the undersigned's staff ascertained that the FDC did make a $217.00 payment on June 11, 2015, to satisfy the filing fee balance in this case, but the payment was not docketed due to an oversight by clerk's office staff. The $217.00 payment was docketed on October 27, 2015, retroactive to June 18, 2015. (Doc. 188).

The final issue concerning plaintiff's claim of "fraud" relates to the FDC's use of the settlement funds to satisfy the outstanding lien balances in plaintiff's three

federal cases. Plaintiff asserts that paying off the liens in their entirety with lump sum payments was improper, because § 1915(b)(2) provides for a payment plan.

Section 1915(b)(2) provides the statutory <u>minimum</u> monthly payment a prisoner must make. Nothing in the plain language of the statute limits a prisoner from voluntarily paying more than the minimum amount. The Settlement and Release of All Claims signed by plaintiff on June 2, 2015, states, in relevant part: "The undersigned agrees that the $1,809.18 settlement amount will be paid to [plaintiff's] inmate trust account, and that all liens posted as of April 3, 2015, which total $1,809.18, will be satisfied from the settlement funds." (Doc. 185, Ex. A, p. 2). The settlement agreement does not provide for the satisfaction of plaintiff's liens through installment payments, nor does the agreement set forth a payment plan. (*Id.*). Defendants' use of the settlement funds to pay off plaintiff's three federal liens in full is not outside the contemplation of the settlement agreement.

Based on the declarations and materials on file, the court finds no evidence of fraud, misrepresentation, or misconduct justifying relief under Rule 60(b)(3).

<u>Plaintiff's Claim of Duress</u>[1]

Plaintiff's claim of duress is raised for the first time in his reply. To support this claim, plaintiff alleges the following:

---

[1] Neither party requested an evidentiary hearing and the undersigned recommends that one is not necessary because there are no material facts in dispute. *See, e.g., Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483 (11th Cir.2007) (holding that a district court has authority to summarily enforce settlement agreement, and decision is reviewed for abuse of discretion). For purposes of this Report and Recommendation, the undersigned accepts the facts contained in plaintiff's reply as true, even though they are unsworn. Nevertheless, the undersigned is not bound to accept plaintiff's legal conclusions, for example, his contention that his entry into the settlement agreement was "involuntary". (Doc. 190, pp. 5-6).

On April 3, 2015, the plaintiff was physically beaten by correction officers at Santa Rosa C.I. Close Management after he left a telephonic conference call with his attorney about a settlement agreement.

On April 4, 2015, Plaintiff was verbally threatened by correction officers who were friends with defendants Mason and Jackson who stated that, if the plaintiff continued with the lawsuit, he would be beaten and sprayed with chemical agents again, and will remain on closed management status.

On April 6, 2015, plaintiff was escorted to a telephonic conference call by two correction officers at Santa Rosa C.I. closed management who threatened the plaintiff with a beating, and coerced [sic] him into agreeing with settlement offer of $1,809.18 with [plaintiff's pro bono] counsel on the telephonic conference call.

On April 12, 2015, Plaintiff received a W-9 form and Settlement Agreement, in which plaintiff did not sign and did not send back to his counsel because he did not want to take the settlement.  See Exhibit C [Plaintiff's unsigned W-9 form].

On April 13, 2015, Plaintiff alerted Warden and Assistant Warden about the beatings from correction officers as retaliation for litigating.

On April 21, 2015, Attorney James V. Cook resigned from plaintiff's case, because plaintiff had not returned a signed Settlement Agreement and W-9 forms.

On May 14, 2015, Plaintiff was transfered [sic] to Florida State Prison (F.S.P.) Close Management Compound, where inmates are "known" to get beaten to death and abused by correction officers.

Upon arrival to F.S.P., officers seized plaintiff's personal property and legal materials, which lead to the plaintiff contacting the Warden about the matter.  See Exhibit D [Plaintiff's letter to Warden at F.S.P. about officers confiscating legal material and property].

On May 22, 2015, at Florida State Prison, the plaintiff received a telephonic conference call from defendant's attorney Marcus O. Graper who told the plaintiff that if he doesn't agree with the settlement agreement of $1,809.18 that he would not prevail summary judgement [sic], and that there would be thousands of dollars in liens that he would have to pay for bringing suit against them. This language was again used by defendant's attorney Marcus O. Graper when he responded to the plaintiff's letter on July 23, 2015. Marcus O. Graper stated in letter response, "If I was to pursue a summary judgement [sic] in this case, rather than settle, then the defendants would have definitely prevailed. At that point, I would have sought taxation of costs against you. These costs include copy costs and deposition transcript costs. The costs of the deposition transcripts total an estimated $1370.00. A judgment against you would have increased your liens by over $1370, resulting in liens of over $3179.18." See Exhibit E [Defendant's response to plaintiff's letter dated July 23, 2013].

Upon arrival back to plaintiff's cell from telephonic conference call, the plaintiff's pen was confiscated, and he was threatened by two officers who stated, "if you want to continue going back and forth with this fake lawsuit, we can break your other arm for you." Plaintiff was then shoved into his cell which looked "like a tornado hit it." Plaintiff's legal documents were scattered everywhere.

On May 29, 2015 at F.S.P., the plaintiff was again escorted to a telephonic conference call that was from the defendant's attorneys Marcus O. Graper and Matthew Vitale. During the telephonic call the plaintiff was under duress, and was under a lot of pressure so, he agreed to the settlement offer of $1,809.18, in fear that he'll be beaten, and held on close management status at Florida State Prison.

On May 29, 2015, the defendant faxed the plaintiff a letter about the telephonic conference call, and arranging another call-out for the plaintiff to execute the Settlement and Release of All Claims. This is proof that the defendants repeatedly had the plaintiff escorted to multiple pressuring conference calls on telephone which always resulted

> in plaintiff being assaulted and threatened by escorting officers. See Ex. F [Defendants' letter to Plaintiff dated May 29, 2015].
>
> On June 2, 2015, plaintiff executed Settlement Agreement and Release Of All Claims. Plaintiff was on close management status at F.S.P., and plaintiff was being physically harmed by correction officers, and threatened into signing the settlement agreement.

(Doc. 190, pp. 3-4 ¶¶ 14-26).

Settlement agreements are considered contracts governed by state law; therefore, Florida contract law controls plaintiff's assertion that the settlement agreement should be set aside based on "duress". *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 and n.4 (11th Cir. 2000) (recognizing that federal common law is disfavored and applied only in rare instances; stating, "Because this settlement agreement is between two private parties, federal common law does not apply."); *United States v. Contents of Bank of America*, 452 F. App'x 881, 882 (11th Cir. 2011) (applying state law to Rule 60(b) motion to set aside entry of judgment pursuant to negotiated settlement agreement on grounds of duress). "Duress is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." *Herald v. Hardin*, 116 So. 863, 864 (Fla. 1928). "To set aside a settlement agreement based on duress under Florida law, a plaintiff must prove that: (1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and, (2) the other contracting party exerted some improper and coercive conduct over [the plaintiff] to effectuate the settlement." *Rodriguez v. Hiday & Ricke, P.A.*, No. 14-CV-61509, 2015 WL 1470513, at *3 (S.D. Fla. Mar. 31, 2015), *Report and Recommendation adopted*, No. 14-CV-61509, Doc. 69 (S.D. Fla. Apr. 21, 2015). "As a general rule under Florida law, a contract or settlement may

not be set aside on the basis of duress or coercion unless the improper influence emanated from one of the contracting parties – the action of a third party will not suffice." *Vitakis-Valchine v. Valchine*, 793 So.2d 1094, 1096 (Fla. 4th DCA 2001). The court in *Vitakis-Valchine* recognized a narrow exception for third-party mediators. *Id*. at 1099-1100 (holding, in "compelling" circumstances where a mediator imposed duress on a party during court-ordered mediation and committed substantial violations of the rules of conduct for mediators, that the court had the inherent authority to set aside a settlement agreement produced at court-ordered mediation). The undersigned has not found a Florida case extending the exception to any other third parties.

The judgment dismissing this case was based on the parties' joint stipulation of dismissal filed on June 16, 2015, which, in turn, was based on the parties' oral settlement agreement made on April 6, 2015,[2] as confirmed by the parties on May 29, 2015, and as set forth in the written Settlement and Release of All Claims. "'Oral settlement agreements are enforceable under both federal and Florida law.'" *McArthur v. Dovetree Prods., Inc.*, No. 4:12cv571/WS, 2013 WL 4041601, at *3 (N.D. Fla. Aug. 8, 2013) (*quoting Skrtich v. Thornton*, No. 3:99cv742, 2003 WL 24845555 (M.D. Fla. Mar. 28, 2003)); *United States v. Pepper's Steel & Alloys, Inc.*, 289 F.3d 741, 742 (11th Cir. 2002) (referring to a prior case on appeal where the court found that the insurer's oral offer to settle for $2 million, accepted two years later, formed a valid settlement agreement); *Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc.*, 704 So. 2d 669, 673 (holding that a verbal settlement agreement is

---

2 Plaintiff admits he entered into the oral settlement agreement on April 6, 2015, by advising his counsel that he accepted defendants' offer. (*See* Doc. 190, pp. 1, 2; *see also* Doc. 169, Ex. F, p. 1; Doc. 170, p. 2)

enforceable); *Bankers Sec. Ins. Co. v. Brady*, 765 So. 2d 870, 872-73 (Fla. 5th DCA 2000) (holding that an oral settlement agreement between the parties' representatives with settlement authority was binding); *Boyko v. Ilardi*, 613 So. 2d 103, 104 (Fla. 3d DCA 1993) (holding that "execution of settlement documents was not a condition precedent to the oral settlement agreement, but rather a procedural formality which both parties to the settlement agreement were obliged to perform"); *see also Dania Jai-Alai Palace, Inc. v. Sykes*, 495 So. 2d 859, 862 (Fla. 4th DCA 1986) (pointing out that "Florida law does not require that a settlement agreement be in writing.").

The only allegation of duress emanating from defendants or their counsel is plaintiff's allegation that opposing counsel "threatened" him on May 22, 2015, by telling him that if the case was not resolved through settlement and the defendants prevailed on summary judgment, they would seek costs against plaintiff. Plaintiff alleges that counsel reiterated this threat in a July 23, 2015 letter. Plaintiff's argument fails for two reasons. First, the alleged threat occurred <u>after</u> plaintiff entered into the oral settlement agreement on April 6, 2015, and therefore cannot have affected the voluntariness of the oral agreement. Second, the court has reviewed plaintiff's evidentiary materials, including plaintiff's letter to counsel (doc. 185, Ex. F), and counsel's July 23, 2015 response. (Doc. 185, Ex. G). There is nothing improper or illegal about counsel's position, arguing the strength of his clients' position, and reminding plaintiff of the legally-authorized, economic consequences to plaintiff if defendants prevailed on summary judgment. *See Paris v. Paris*, 412 So. 2d 952, 953 (Fla. 1st DCA 1982) ("[T]here can be no duress without there being a threat to do some act which the threatening party has no legal right to do. . . ."); *Fuller v. Roberts*, 17 So. 359, 362 (Fla. 1895) (holding that there can be no duress where the act done or threatened is nothing more than what the party had a legal right

to do); *see also See Smith v. Sec'y, Fla. Dep't of Corr.*, 598 F. App'x 738 (11th Cir. 2015) (holding that a court may tax the costs of a defendant, including the costs of depositions and copying costs, against an indigent prisoner if the defendant prevails on summary judgment).  Litigation is a business decision, and it is important that litigants assess their likelihood of success and the consequences of loss.  Defendants' counsel did not exert any improper influence over plaintiff to effectuate the settlement.

Plaintiff's allegations of duress arising from threats by non-party corrections officers provide no basis to vacate the judgment.  Plaintiff does not allege, and nothing in the record supports a finding, that defendants or defendants' counsel were involved in any physical assault or threat thereof, or that they caused any improper conduct by third parties.  Further, even if Florida recognized an exception for third-party prison officials, relief in this case would still be unwarranted.  The record establishes that plaintiff's entry into the settlement agreement was of his own volition.  Several factors support this conclusion.

Plaintiff alleges that while at Santa Rosa CI, the prison where defendants are employed, he was beaten on April 3, 2015, after leaving a conference call with Mr. Cook; threatened on April 4, 2015, by friends of defendants who told him that if he continued with the lawsuit he would be beaten, sprayed with chemical agents and remain on close management; and threatened again on April 6, 2015, while being escorted to a conference call with Mr. Cook which resulted in the parties' oral settlement.  Plaintiff admits, however, that despite these alleged threats and assaults, he refused to sign the written settlement agreement and release of claims on April 12, 2015.  Plaintiff's refusal evidences that the alleged assaults and threats to end the

litigation were not so coercive as to interfere with plaintiff's free will, even though he remained at Santa Rosa CI. (Doc. 190, p. 2 ¶ 17).

Even more telling is plaintiff's correspondence to defendants' counsel just days after refusing to sign the release. On April 23, 2015, while plaintiff was still housed at Santa Rosa CI and represented by pro bono counsel Mr. Cook, plaintiff sent a personal letter to defendants' counsel explaining that the reason he refused to sign the release was because he decided he wanted more money. Plaintiff explained:

> I have received your settlement offer of $1,809.18 to release all claims. As you are already aware of, this amount will pay off my liens, and leave me with nothing. Not to make matters personal but, I only had 1 person who sent money to me every 4-5 months, and she passed away on October 7, 2013. Therefore, that offer is sense-less to me.

(Doc. 169, Ex. E, p. 1). Plaintiff went on to argue that the defendants' case was not as strong as they believed it to be. Plaintiff concluded by stating:

> I will make an offer to release all claims for $3,500.00. Give me a good counter offer so that we can agree on. Send it to me, not James Cook. He will be resigning from my case. So send your counter offer to me. I'm showing you 8th amend violations against defendants. P.S. James Cook asked for my permission to abort the case. Send everything to me. I won't settle for $1,809.13! I won't be able to get $ after that. My grandma passed.

(Doc. 169, Ex. E, p. 4). Plaintiff enclosed his own signed Settlement and Release of All Claims for $3,500.00. (*Id.*, pp. 6-7). Plaintiff's letter did not so much as intimate that the oral settlement was induced by duress or threats – the issue was money. The tone of plaintiff's letter was far from that of someone who feared for his safety if he did not end the litigation. To the contrary, plaintiff explained that he simply had a change of heart and felt he was entitled to more. Defendants' counsel forwarded the letter to plaintiff's then-counsel Mr. Cook. (Doc. 169, Ex. F). Mr. Cook responded

that he spoke to plaintiff regarding the letter, and that he (Cook) was under the impression that plaintiff might ask him to withdraw. (*Id*.). Mr. Cook made no mention of plaintiff having raised an issue of duress or threats. (*Id*.). After plaintiff moved to terminate Mr. Cook for lack of diligence during discovery, Mr. Cook moved to withdraw on May 4, 2015, citing plaintiff's desire to terminate the attorney-client relationship. (Doc 170, p. 1 ¶ 3). With regard to the April 6, 2015 oral settlement, Mr. Cook offered this insight: "Plaintiff has not claimed that counsel acted without his authority in concluding the settlement in this case and so counsel will not address that issue. However, Plaintiff has made statements that could appear to challenge counsel's diligence in litigating this case." (*Id*., p. 2 ¶ 5). Mr. Cook went on to enumerate and address plaintiff's concerns regarding his diligence during discovery. (*Id*.). Again, Mr. Cook made no suggestion that plaintiff had ever hinted of duress at the time of the April 6, 2015 settlement agreement. Plaintiff's stricken motion to terminate Mr. Cook likewise made no hint of duress.

In an effort to explain his confirmation of the oral settlement agreement on May 29, 2015, and his execution of the written release on June 2, 2015, plaintiff now alleges that his oral confirmation and written release were also made under duress. Plaintiff's allegations of duress in May and June of 2015 occurred <u>after</u> plaintiff entered into the oral settlement on April 6, 2015, and therefore cannot form the basis for setting aside the oral settlement agreement. Plaintiff's confirmation of that agreement and his execution of the written release were mere formalities. Any duress plaintiff suffered in executing these formalities does not affect the voluntary nature of the earlier oral settlement agreement.

That the parties' settlement was voluntary is consistent with plaintiff's behavior after his execution of the written release. Plaintiff executed the Joint Stipulation of

Voluntary Dismissal With Prejudice on June 16, 2015, and makes no suggestion that he was coerced into doing so. After the undersigned issued a recommendation that this case be dismissed pursuant to the parties' stipulation, plaintiff allowed the objection deadline to pass in silence. The District Judge adopted the recommendation and entered judgment dismissing this action on July 20, 2015. (Docs. 183, 184).

Plaintiff was transferred to a different institution (Gulf Correctional Institution) in early July of 2015, where he sent at least two letters to defendants' counsel concerning the settlement. (Doc. 185, Exs. F, H). Plaintiff made no mention of having entered the agreement under duress; rather, in his July 17, 2015 letter, plaintiff complained that defendants had not complied with the terms of the settlement agreement. (Doc. 185, Ex. F). In plaintiff's August 15, 2015 letter, plaintiff sought, in quite adamant terms, to enforce the terms of the settlement agreement (Doc. 185, Ex. H). Similarly, plaintiff's Rule 60(b) motion filed on September 17, 2015, made not a passing reference to duress, and was based entirely on defendants' alleged breach of the settlement agreement. (Doc. 185). It was only after plaintiff realized he could not prevail on his allegations of fraud that he injected his claim of duress. Mr. Laronde's lack of candor and forthrightness could hardly be more evident. Neither buyer's remorse, nor a newly conceived need for a bigger check deserve more consideration than already extended in this report.

Plaintiff has failed to demonstrate sufficiently extraordinary circumstances to warrant relief under Rule 60(b).

## CONCLUSION

Having considered the parties' submissions and the entire record, the undersigned finds that no evidentiary hearing is necessary, and that the

circumstances of this case do not warrant the extraordinary relief of vacating the judgment.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect plaintiff's current address as indicated on his latest pleading (doc. 190): Gulf Correctional Institution Annex, 699 Ike Steel Road, Wewahitchka, Florida 32465.

And it is respectfully RECOMMENDED:

That plaintiff's motion for relief from judgment (doc. 185) be DENIED.

At Pensacola, Florida, this 4th day of December, 2015.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.